# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
## 3:07-cv-272

| | |
|---|---|
| KAYE H. CROSBY ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND ORDER** |
| ) | |
| ELECTRONIC DATA SYSTEMS ) | |
| CORPORATION HEALTH BENEFIT PLAN, ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on cross motions for summary judgment (Doc. Nos. 8, 16). For the reasons stated below, the Court finds as a matter of law (1) that the 1989 Plan is a welfare benefit plan governed by ERISA and (2) that the plan does not provide the plaintiff a vested right to receive lifetime health benefits without charge. Therefore, the Court **GRANTS** defendant's motion (Doc. No. 8) and **DENIES** plaintiff's motion (Doc. No. 16).

**I.    FACTS AND PROCEDURAL HISTORY**

The plaintiff's husband, Ladson Crosby, was an employee of Electronic Data Systems Corporation ("EDS") until his death on October 5, 1989. (Doc. No. 1 at 1). At the time of his death, he was a vested participant of the EDS Retirement Plan. (Doc. No. 8-3 at 2). He was also enrolled in the EDS Health Benefit Plan ("the Plan"). (Doc. No. 1 at 1). The Plan provided medical and dental insurance coverage for Mr. Crosby, his children, and his wife, the plaintiff in this case. (Doc. No. 8-3 at 2).

**A.    Contents of the Survivor's Benefit Packet**

Shortly after Mr. Crosby's death, EDS sent the plaintiff a Survivor's Benefit Packet ("the Packet"), containing information about how to enroll in continuing healthcare coverage under

the Plan as the surviving spouse of a deceased EDS employee. (Doc. No. 8-3 at 2). After receiving the Packet, the plaintiff completed and submitted the Enrollment Form to enroll herself and her dependent children in medical and dental coverage. (Doc. No. 9-3 at 3). As the surviving spouse of an active employee, the Enrollment Form states that the plaintiff owed nothing for medical benefits and $24.86 for dental benefits. (Doc. No. 9-3 at 3).

**B.    1989 Plan**

The 1989 Plan, under which the plaintiff initially enrolled, states that the surviving spouse of an employee who was vested in the EDS Retirement Plan would only be charged contributions for dental coverage, until reaching the age 65. (Doc. No. 9 at 25-26). At age 65, the surviving spouse would be required to contribute for medical and dental coverage on the same basis as retiree participants. (Doc. No. 9 at 26). However, the Plan also states that the "Administrator reserves the right to change any contribution rate" and changes in contribution requirements could be implemented after 30 days written notice. (Doc. No. 9-2 at 20). The last paragraph of the 1989 Plan states that the company could alter, modify, discontinue, or amend the Plan at any time. (Doc. No. 9-2 at 32). Although the defendant alleges that the claims administrator sends a benefit handbook to every participant for each plan year (Doc. Nos. 22 at 6-7; 22-2 at 2), the plaintiff denies ever receiving a full copy of the 1989 Plan (Doc No. 17 at 2).

Several modifications were made to the Plan between 1989 and 2007. (Doc. Nos. 9-6; 9-7; 10; 10-2). During that time, the defendant sent various notices to the plaintiff explaining the changes in the contribution requirement for a surviving spouse. (Doc. Nos. 10-3 at 2, 12; 10-4 at 2; 12-4 at 2). It appears that the plaintiff began paying a small contribution for medical coverage

at some point between 2000 and 2002.[1] The plaintiff alleges that she did not file a formal claim when she was first charged for health benefits because she was told over the phone that the fee would be nominal and thus not worth protesting. (Doc. No. 8-5 at 3).

Once the plaintiff reached 65 years of age and became Medicare-eligible, her premium increased from $65.83 a month to $198.75 a month. (Doc. No. 17 Ex. 1 at 3). She received notification of the increase in January 2007, one month before she turned sixty-five. (Doc. No. 17 Ex. 1 at 2). After receiving notification of the change, the plaintiff filed a formal claim for health benefits with the Plan's administrator on January 18, 2007. (Doc. No. 13 at 13).[2] The benefits were denied on March 28, 2007 via an email from an EDS Health Benefits Specialist. (Doc. No. 12-5 at 9-10). The plaintiff's legal counsel asked EDS to reconsider the decision on April 3, 2007, and EDS's Counsel for Employee Benefits reaffirmed the denial of benefits by letter dated April 5, 2007. (Doc. No. 8-3 at 10). The plaintiff filed her complaint in this Court on July 13, 2007, alleging violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq. The parties filed cross motions for summary judgment (Doc. Nos. 8, 16) and the matter is now ripe for review.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A

---

[1] Although the plaintiff alleges in the Complaint that she received medical coverage at no cost until approximately 2005 (Doc. No. 1 at 2), the plaintiff was billed for medical coverage as early as July of 2000 (Doc. No. 9-4 at 2), and the plaintiff wrote in her formal benefits claim that she began to be charged in 2002 (Doc. Nos. 12-5 at 3; 17 at 8).

[2] The plaintiff does not challenge the Plan's contribution rates for dental coverage because the premium rates for dental coverage were clearly listed in the initial Packet that the plaintiff received after her husband's death. (Doc. Nos. 17 at 7; 1 at 2).

3

genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Once this initial burden is met, "the burden shifts to the nonmoving party to show that there are genuine issues of material fact." Emmett v. Johnson, 532 F.3d 291, 297 (4th Cir. 2008). The party opposing a motion for summary judgment may not rest upon mere allegations or denials in his pleadings, but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original); see Anderson, 477 U.S. at 252 (explaining that a "mere existence of a scintilla of evidence" is insufficient to overcome summary judgment). "[T]he non-moving party must present sufficient evidence such that 'reasonable jurors could find by a preponderance of the evidence' for the non-movant." Sylvia Dev. Corp. v. Calvert County, 48 F.3d 810, 818 (4th Cir. 1995) (quoting Anderson, 477 U.S. at 252). When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in a light most favorable to the non-moving party. Matsushita, 475 U.S. at 587.

## III. ANALYSIS

In reviewing the plaintiff's claim, the Court must first determine whether the plaintiff brings a claim for benefits under Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), and/or a claim

for breach of fiduciary duty under Section 502(a)(2), 29 U.S.C. § 1132(a)(2). Next, the Court must decide whether the document at issue meets the requirements of a "plan" under 29 U.S.C. § 1022(b). After the Court identifies the plan, the Court must determine whether the plan is a "pension plan" under 29 U.S.C. § 1002(2)(A) or a "welfare benefit plan" under 29 U.S.C. § 1002(1)(A). Finally, the Court must review the plan and decide whether it gives the plaintiff a vested right to receive health benefits without charge.

### A. Whether Plaintiff's Action is a Claim for Benefits or for Breach of Fiduciary Duty

The first step in reviewing the plaintiff's claim is to specify which type of ERISA action applies. See LaRue v. DeWolff, Boberg & Assocs., Inc., 128 S. Ct. 1020, 1024 (2008) (explaining that Section 502(a) identifies six types of civil actions that may be brought under ERISA). The plaintiff never specifies under which ERISA provision she seeks relief. However, the plaintiff does imply that this action falls under Section 502(a)(2) since she asserts that the breach of fiduciary duty statute of limitations applies. Defendant argues that this action falls under Section 502(a)(1)(B) as a claim for benefits. Therefore, the Court must determine whether plaintiff's claims fall under Section 502(a)(1)(B) (claim for benefits) and/or Section 502(a)(2) (breach of fiduciary duty).

Section 502(a)(1)(B) of ERISA states that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). See Aetna Health Inc. v. Davila, 542 U.S. 200, 210 (2004) ("If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits."). Here, the plaintiff requests three types of relief (1) defendant's repayment of any premiums that

plaintiff previously paid for health coverage; (2) declaration that plaintiff acquired vested rights to contribution-free health coverage; and (3) prejudgment interest from the breach of contract. (Doc. No. 1 at 3). Based on the relief requested, it appears that plaintiff's claims fall under Section 502(a)(1)(B) as a claim "to recover benefits" and as a claim to "clarify [her] rights to future benefits."

Although plaintiff never disputes that Section 502(a)(1)(B) applies, the plaintiff suggests that she also has a claim under Section 502(a)(2).[3] Section 502(a)(2) "authorizes a beneficiary to bring an action against a fiduciary." Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 140 (1985). Although a beneficiary may sue a fiduciary under ERISA, "any recovery under section 502(a)(2) must be for the plan as a whole rather than for individual beneficiaries." Coyne & Delany Co. v. Blue Cross & Blue Shield, 102 F.3d 712, 714 (4th Cir. 1996); see also Joseph F. Cunningham Pension Plan v. Mathieu, No. 97-2230, 1998 U.S. App. LEXIS 15080, at *5-6 (4th Cir. July 6, 1998) (explaining that plaintiffs must demonstrate a "loss" to the Plan to prevail on a breach of fiduciary duty theory). Here, the plaintiff is seeking individual relief that would only benefit herself. Because the plaintiff does not claim that the Plan suffered a loss, the plaintiff cannot recover for the defendant's alleged breach of fiduciary duty.

Additionally, the plaintiff has not sued a fiduciary as defined by ERISA. An entity must fulfill certain defined functions to become subject to fiduciary review. See Lockheed Corp. v. Spink, 517 U.S. 882, 890 (1996) (explaining that plan sponsors who alter the terms of a plan are not fiduciaries). A fiduciary is one who "exercises any discretionary authority or discretionary control respecting management of such plan or . . . management or disposition of its assets."

---

[3] Section 502(a)(2) states that "[a] civil action may be brought . . . by the Secretary, or by a participant, beneficiary, or fiduciary for appropriate relief under section 409 [29 U.S.C. § 409]." Section 409(a) states that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach . . . ." 29 U.S.C. § 1109(a).

29 U.S.C. § 1002(21)(A); see Pegram v. Herdrich, 530 U.S. 211, 222 (2000) ("A fiduciary within the meaning of ERISA must be someone acting in the capacity of manager, administrator, or financial adviser to a 'plan.'"). The plaintiff sued the Plan directly and fails to show how the Plan exercises discretionary authority over itself or manages its assets. See Todd v. AIG Life Ins. Co., 47 F.3d 1448, 1458 (5th Cir. 1995) ("Given that an ERISA plan as an entity cannot have discretionary authority over itself, we conclude that [the ERISA plan] does not fall within the statutory definition of a fiduciary and therefore cannot be liable for [a] breach of [fiduciary] duty."). Moreover, the plaintiff states that EDS, instead of the Defendant Plan, was the entity that breached its fiduciary duty. (Doc. No. 17 at 10). The Court finds that plaintiff's claims do not involve a breach of fiduciary duty; instead, this Court will regard plaintiff's claims as governed by Section 502(a)(1)(B). Finding no genuine issue of material fact relating to a Section 502(a)(1)(B) claim,[4] the Court must determine whether either party is entitled to judgment as a matter of law.

### B. Whether the Packet or the 1989 Plan Defines Plaintiff's Rights under ERISA

Next, the Court must decide which documents meet the ERISA requirements of a "plan" document. The plaintiff alleges that the documents included in the Survivor's Benefit Package are considered "official plan documents," whereas the defendant alleges that the 1989 Plan and subsequent amendments are the only documents governed by ERISA.

The Court finds that the documents in the Survivor's Benefit Package do not satisfy ERISA's requirements for plan documents. ERISA requires plan documents to contain, inter alia, "the plan's requirements respecting eligibility for participation and benefits; . . . [and] the source of financing of the plan and the identity of any organization through which benefits are

---

[4] The parties dispute whether the defendant mailed a copy of the Plan to the plaintiff. This is not a material fact in a claim for benefits under Section 502(a)(1)(B).

provided." 29 U.S.C. § 1022(b); see Gable v. Sweetheart Cup Co., Inc., 35 F.3d 851, 857 n.2 (4th Cir. 1989) (explaining how the documents at issue do not qualify as "official plan documents" because they do not satisfy ERISA's requirements for plan documents as discussed in § 1022(b)).

The documents in the Survivor's Benefit Package do not define the Plan's eligibility requirements. The documents do not provide details about what the Plan covers and excludes, and they fail to include the financing of the plan and the plan administration. The documents merely notified the plaintiff about her eligibility to enroll in the Plan's surviving spouse coverage and explained how to enroll. Thus, the documents are not "plan documents" within the meaning of ERISA. These documents are merely "informal communications that do not govern the company's obligations under the ERISA plan." Id. at 857; see id. ("[W]e have no need to consider plaintiffs' extrinsic evidence in determining the extent of the company's rights and obligations under that plan."). Therefore, the plaintiff's ERISA rights are not governed by the documents in the Survivor's Benefit Package.

The 1989 Plan does, however, satisfy the ERISA "plan" requirements. For example, the Plan provides detailed information about coverage and exclusions for medical and dental benefits. (Doc. Nos. 9 at 43; 9-2 at 6; 9-2 at 12; 9-2 at 14). The Plan explains how the benefits are funded through the EDS Health Benefits Trust, (Doc. No. 9-2 at 19), and how the Plan will be administered. (Doc. No. 9-2 at 23). Therefore, the 1989 Plan constitutes the relevant plan document governing plaintiff's rights.

C. **Whether the 1989 Plan is a Pension Plan or Welfare Benefit Plan**

The Court must determine whether the 1989 Plan is considered a pension plan or a welfare benefit plan. See Pierce v. Sec. Trust Life Ins. Co., 979 F.2d 23, 29 (4th Cir. 1992)

8

(explaining why "Congress structured ERISA to impose the most stringent requirements in connection with pension plans and left the employer with considerable flexibility with respect to welfare plans" (quoting Reichelt v. Emhart Corp., 921 F.2d 425, 429 (2d Cir. 1990))). A plan is a "pension plan" "to the extent that [it] . . . provide[s] retirement income to employees, or . . . results in a deferral of income by employees for periods extending to the termination of covered employment or beyond." 29 U.S.C. § 1002(2)(A). A plan is a "welfare benefit plan" "to the extent that such plan . . . was established or is maintained for the purpose of providing for its participants or their beneficiaries . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment." 29 U.S.C. § 1002(1)(A). "Although ERISA contains a strict vesting requirement for pension benefits, it expressly exempts employee welfare benefit plans from that requirement. Accordingly, a plan participant's interest in welfare benefits is not automatically vested, and employers have a statutory right to 'amend the terms of the plan or terminate it entirely.'" Gable, 35 F.3d at 855 (quoting Biggers v. Wittek Indus., Inc., 4 F.3d 291, 295 (4th Cir. 1993)) (internal citations omitted). "An employer may 'waive[ ] its statutory right to modify or terminate benefits,' however, by voluntarily undertaking an obligation to provide vested, unalterable benefits." Id. (quoting Wise v. El Paso Natural Gas Co., 986 F.2d 929, 937 (5th Cir. 1993)).

Courts are careful not to lightly infer the existence of an agreement to vest benefits "[b]ecause such an obligation constitutes an extra-ERISA commitment." Id. Therefore, any right to a fixed level of benefits must be "found in the plan documents and must be stated in clear and express language." Id. (internal quotation marks omitted). Plaintiff bears the burden of proving that her employer's ERISA plan includes a promise to provide vested health benefits. Id.

9

Plaintiff suggests that "the benefits in question are more in the nature of pension benefits than welfare benefits." (Doc. No. 17 at 6). The plaintiff states that "[t]his [plan] is not unlike pension benefits being paid to an employee's survivor's upon death." (Doc. No. 17 at 6). However, the Plan does not provide "retirement income to employees" nor does the Plan "result[] in a deferral of income by employees" as defined under "pension plans" in ERISA. 29 U.S.C. § 1002(2)(A). Instead, the Plan fits squarely within the meaning of a welfare benefit plan by providing health benefits to beneficiaries of the Plan. See 29 U.S.C. § 1002(1)(A).

### D. Whether the 1989 Welfare Benefit Plan Provides Vested, Unalterable Benefits

After reviewing the 1989 Plan and its later amendments, the Court finds that none of the Plan documents contain any language that can be viewed as creating a vested right in health benefits. The 1989 Plan expressly reserves the right to change any contribution rate. (Doc. No. 9-2 at 32). Subsequent Plan documents contain similar language. (Doc. Nos. 9-7 at 34; 10-2 at 19; 11-2 at 26; 12-2 at 22). Moreover, the plaintiff fails to point out any language in the 1989 Plan and its amendments that can be construed as providing the plaintiff a "clear and express" vested right in health benefits. Therefore, defendant is entitled to judgment on the ERISA claim as a matter of law.[5]

### E. Internal Revenue Code

Plaintiff also alleges violations of the Internal Revenue Code ("IRC") governing qualified pension, profit-sharing, and stock bonus plans (26 U.S.C. § 401), minimum vesting standards for the same (26 U.S.C. § 411), and tax exempt organizations and trusts (26 U.S.C. § 501). (Doc. No. 1 at 2-3). The plaintiff never states how these sections apply to Defendant Plan

---

[5] In light of the Court's conclusions regarding the vesting of health benefits, the Court declines to address the arguments concerning the statute of limitations.

or how the Plan violated the various IRC provisions. Sections 401 and 411 are inapplicable to a welfare benefit plan because both sections pertain to tax qualification issues of retirement plans. Section 501 addresses organizations and trusts that are exempt from income tax; yet, the plaintiff has not alleged that the Plan or underlying trust improperly claimed tax exempt status. Therefore, the IRC claims are dismissed for failure to state a claim upon which relief can be granted.

IV. **CONCLUSION**

The Court finds that the 1989 Plan is a welfare benefit plan under ERISA and that the Plan provides no clear and express vested right in health benefits. Additionally, the IRC claims are dismissed for failure to state a claim upon which relief can be granted.

**IT IS, THEREFORE, ORDERED** that the defendant's Motion for Summary Judgment (Doc. No. 28) is **GRANTED** and the case is **DISMISSED**.

Signed: December 15, 2008

Robert J. Conrad, Jr.
Chief United States District Judge